**SO ORDERED.**

**SIGNED August 3, 2017.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**
_____

```
               UNITED STATES BANKRUPTCY COURT
                WESTERN DISTRICT OF LOUISIANA

IN RE:

CASEY KARL SIMON,                              CASE NO. 14-51602

     Debtor
-----------------------------------------------------------------
ROLAND MICHAEL CLAYTON,

     Plaintiff

VERSUS                                         ADVERSARY NO. 16-5009

CASEY KARL SIMON,

     Defendant
-----------------------------------------------------------------
                       REASONS FOR DECISION
-----------------------------------------------------------------
```

This is a non-dischargeability proceeding arising from an early morning fight outside a popular 24-hour diner. The plaintiff, Michael Clayton, contends that he suffered significant injuries at the hands of the debtor, Casey Simon, and that his damages are non-dischargeable as injuries resulting from "willful

and malicious" acts under 11 U.S.C. § 523 (a)(6). The court took the matter under advisement following a trial on the merits. After reviewing and considering the trial record, the parties' briefs and arguments, and the relevant authorities, the court rules as follows.

## JURISDICTION

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. §157(b)(2)(I) and (J) and Stern v. Marshall, 564 U.S. 462, 131 S.Ct. 2594 (2011). The following Reasons for Decision shall constitute the court's findings of fact and conclusions of law.

## BACKGROUND

The fight at the center of this case occurred outside of Mel's Diner on Johnson Street in Lafayette, Louisiana at approximately 2:30 a.m. on October 18, 2010. Clayton and his friend, Brandon Fruge, arrived at Mel's Diner after visiting two local bars. (Plaintiff's Exhibit ("Pl. Ex.") No. 1 at 10-11). Clayton testified that he and Mr. Fruge left his truck to go into the restaurant when he saw Darrah Wentworth sitting in the front passenger seat of Simon's truck, which was parked near the entrance of the restaurant. (Trial Transcript ("Tr.") at 89-90). Clayton

-2-

approached the driver side of Simon's truck to ask for Ms. Wentworth's telephone number. (Id. at 90-91). At some point, Clayton opened the passenger side door to talk to Ms. Wentworth. (Id.) Simon then exited the restaurant and saw Clayton with the driver's side door of his truck opened talking to Ms. Wentworth. Both Simon and Clayton testified that Simon confronted Clayton. Simon yelled to Ms. Wentworth whether she knew Clayton. When she responded no, Simon confronted Clayton. (Id. at 21, 92). Simon testified that he and Clayton exchanged words. According to Simon, he yelled "what the [expletive] are you doing?" He told Clayton to "get away from my truck." (Id. at 21-22). At this point, the accounts of the altercation diverge. Clayton testified that he had his hands down and approached Mr. Simon non-aggressively. (Id. at 92). Mr. Fruge testified in his deposition that Clayton was not acting aggressively. (Pl. Ex. No. 1 at 15). Clayton testified that he told Simon that he did not know that Ms. Wentworth was his girlfriend and that he tried to apologize. (Tr. at 91-93). Simon testified that Clayton approached him in a threatening manner. (Id. at 24, 27, 30). Simon admitted that he was angry because he felt that Clayton had "disrespected him" by approaching Ms. Wentworth and opening the door of his truck. (Tr. at 55-56). What happened next, however, is clear from the record. Simon threw the first punch, hitting Clayton on the back of the head. (Pl. Ex. No.

-3-

1 at 16). Clayton testified that he was not expecting the punch and that he was dazed after the blow. (Tr. at 93-94; Id. at 21). Clayton then grabbed Simon and the two wrestled on the ground. At one point, they slammed against the window of the restaurant. (Id. at 94-95). It is unclear from the record whether Clayton struck Simon while they were wrestling on the ground.

The fight broke up when an employee of Mel's Diner yelled that the police were on their way. (Id. at 96, 104). Simon walked over to his truck and put the keys in the ignition in an attempt to leave the scene. (Pl. Ex. No. 1 at 18-19). Clayton approached the driver's side of Simon's truck and wedged himself between the door and the frame of the truck. (Id.; Tr. at 160). Clayton leaned into the truck over Simon, and took Simon's keys out of the ignition. (Id.) Clayton testified that he wanted to prevent Simon from leaving the scene until the police had arrived. (Tr. at 96). Clayton testified that he believed Simon had committed an assault and battery and should have been arrested. Simon testified that Clayton told him that he was taking the keys to keep Simon at the scene for the police. (Tr. at 161). Clayton did not hit or shove Simon while taking the keys. (Tr. at 52).

Mr. Fruge testified during his deposition that he and an employee of Mel's Diner grabbed Clayton while he was in the doorway of Simon's truck to try to get him away from Simon. (Pl. Ex. No.

-4-

1 at 18-19). Once Clayton retrieved the keys out of Mr. Simon's ignition, he retreated from the truck and backed away. (Tr. at 96). According to the testimony of Mr. Fruge and Clayton, Simon emerged from the truck, rushed Clayton, and landed a hard punch to the side of Clayton's head. (Pl. Ex. No. 1 at 18-21; Tr. at 96-97). Clayton fell to the ground, and Simon continued hitting Clayton while he was on the ground. (Id.) Simon contends that he was only trying to retrieve his keys so that he could leave the scene. There is no evidence in the record that Clayton fought back during this last altercation. According to the testimony of Mr. Fruge and Clayton, Clayton lost consciousness while Simon continued to punch him on the ground. (Pl. Ex. No. 1 at 19-21, 37-38; Tr. at 96-98). Simon then retrieved his keys and left the scene. Clayton testified that he remembers nothing after losing consciousness, and that his next memory was waking up in the hospital. (Tr. at 98). The Lafayette City Police arrived shortly after Simon left the parking lot. (Defendant's Exhibit ("Def. Ex.") No. 1). Simon was later stopped and taken into custody by the Lafayette Parish Sheriff's Office and returned to the scene of the fight. (Tr. at 62-63). The Lafayette City Police investigated and filed a report, but did not file charges or take either Simon or Clayton into custody. (Def. Ex. No. 1).

The record reflects that Clayton incurred over $14,000 of

-5-

expenses related to his injuries. (Pl. Ex. Nos. 2-3). He further testified that, almost seven years later, he still has nerve damage from the fight. (Tr. at 103). Clayton subsequently filed suit against Simon in Louisiana state court seeking damages for his injuries. Simon did not respond to the summons or petition, and a default judgment was entered against Simon. Simon filed for relief under Chapter 7 of the Bankruptcy Code on December 30, 2014. Clayton filed the present adversary proceeding in the bankruptcy case seeking a determination that he suffered a "willful and malicious injury" at the hands of Simon and, therefore, his damages should be excluded from the discharge under 11 U.S.C. § 523(a)(6).

## DISCUSSION

**A. Admissibility of the Fruge Witness Statements.**

As a preliminary matter, Clayton objects to the admission of the witness statements of Mr. Fruge. One of those witness statements is a handwritten account of the fight, and the other is a witness statement included in a police report. Clayton contends that the witness statements are hearsay and do not fall within any exception to the hearsay rule. Simon contends that the witness statements were included as an exhibit to Mr. Fruge's deposition transcript and that the transcript was admitted in this case as one of Clayton's exhibits.

Under Rule 802 of the Federal Rules of Evidence, hearsay is

-6-

inadmissible unless it falls within an exception to the hearsay rule. Hearsay is an out of court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The first handwritten Fruge witness statement--marked as proposed exhibit 5--satisfies this definition. Simon does not point to any exception to the hearsay rule, but instead appears to make a waiver argument based on the inclusion of the witness statement in the deposition transcript. This argument is without merit. Clayton's counsel specifically objected to hearsay during the deposition and thus preserved any objections to admissibility. The proposed exhibit is inadmissible under Rule 802.

With respect to the witness statement in the police report, the report itself is admissible under Rule 803(8). However, witness statements in the report must satisfy an independent exception to the hearsay rule; Rule 803(8) only covers the report and not hearsay witness statements in the report. In re Lewis, 528 B.R. 885, 889-90 (Bankr. E.D. Wis. 2015). Simon points to no other exception to the hearsay rule. Accordingly, the court sustains Clayton's objection to the admissibility of the witness statements in the police report.

**B.  Elements of a Claim Under § 523(a)(6).**

Section 523(a)(6) provides for the non-dischargeability of

-7-

debts arising from a "willful and malicious injury by the debtor to another entity or to the property of another entity." Courts have often disagreed over the level of culpability required under section 523(a)(6). In <u>Kawaauhau v. Geiger</u>, the Supreme Court put some of these disputes to rest. 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Court held that injuries resulting from negligent or reckless conduct are insufficient to satisfy the requirements of section 523(a)(6). A finding that the debtor engaged in intentional acts that resulted in injury is similarly insufficient. <u>Id</u>. <u>Geiger</u> did not, however, resolve all of the questions over the appropriate standard for a section 523(a)(6) claim. The circuits employ different standards in determining whether a debtor's conduct amounts to a "willful and malicious injury ... to another entity or to the property of another entity." In order for conduct to qualify as willful and malicious under Fifth Circuit precedent, the debtor must act with "either an objective substantial certainty of harm or a subjective motive to cause harm." <u>Williams v. IBEW Local 520 (In re Williams)</u>, 337 F.3d 504, 509 (5th Cir. 2003) (quoting <u>In re Miller</u>, 156 F.3d 598, 606 (5th Cir. 1998)).

A creditor has the burden of proof in an action to determine the dischargeability of a debt. <u>Grogan v. Garner</u>, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Intertwined with this

-8-

burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." Hudson v. Raggio & Raggio, Inc. (In re Hudson), 107 F.3d 355, 356 (5th Cir. 1997). Accordingly, a creditor must establish each an every element of a statutory exception to discharge under 11 U.S.C. § 523 et seq. by a preponderance of the evidence.

**C. Does Simon's Conduct Satisfy the Elements of § 523(a)(6)?**

An intentional tort under state law does not always amount to a finding that the injury resulting from the tort is a "willful and malicious injury" within the meaning of section 523(a)(6). In Louisiana, a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact, is a battery." Caudle v. Betts, 512 So.2d 389, 391 (La. 1987). This definition incorporates the element of intent as required under section 523(a)(6), but omits the additional requirement for non-dischargeability that the defendant act with a subjective motive to cause harm, or that there is a substantial certainty of harm resulting from the defendant's actions. See id. ("The intention [for battery] need not be malicious nor need it be an intention to inflict actual damage."). Section 523(a)(6) thus imposes a higher burden than a state-law battery claim.

-9-

Here, however, the record supports Clayton's claim that Simon either intended to injure Clayton, or that such injuries were substantially certain to result from the beating that Simon inflicted on Clayton. The record reflects two distinct altercations between Clayton and Simon: the first, when Simon saw Clayton talking to Ms. Wentworth, and the second after Clayton took Simon's truck keys. Simon threw the first punch in the first altercation. Simon contends that Clayton was acting aggressively by opening the passenger door of his truck, and then by approaching Simon in a threatening manner when confronted. The record, however, does not support this characterization of Clayton as the primary aggressor. Clayton approached Simon and "exchanged words," but the record does not support Simon's claim that Clayton's behavior provoked the confrontation. In his deposition, Mr. Fruge testified that Clayton was not acting in a threatening manner from his vantage point and was merely talking to Simon. Moreover, by the time Clayton exchanged words with Simon, Clayton was no longer next to the passenger door or Ms. Wentworth. He thus posed no immediate threat. Rather, what most likely precipitated Simon's first punch was Simon's belief that Clayton was "disrespecting" him by his actions toward Ms. Wentworth. Mr. Fruge testified in his deposition that Simon appeared very angry and moved aggressively toward Clayton. (Pl. Ex. 1 at 21). Considering this testimony, Simon's

-10-

first punch and the initial altercation satisfies the elements for non-dischargeability as a willful and malicious act that resulted in injury. Simon struck Clayton with the purpose of causing injury in retaliation for what he considered to be a slight by Clayton.

The second altercation resulted in most of the damage suffered by Clayton. After Clayton took possession of Simon's keys, Simon rushed Clayton and struck him so hard that he fell to the ground. Simon then continued to beat Clayton while he was still on the ground. Based on the record, Clayton was defenseless and lost consciousness during the beating. (Tr. at 15, 97, 163). Simon contends that his intent was only to retrieve his keys from Clayton so that he could leave the scene. The evidence simply does not support this contention because Simon had Clayton under control with the first punch, which caused Clayton to fall to the ground. Instead of retrieving his keys, Simon beat Clayton into unconsciousness. Mr. Fruge testified that Clayton did not fight back and was defenseless. (Pl. Ex. No. 1 at 21). Considering the evidence in its entirety, Simon's actions were willful and malicious in that he intended to inflict injury on Clayton above and beyond merely retrieving his keys.

**D. The Applicability of "Justification" or "Excuse".**

Simon raises "justification or excuse" as a defense to Clayton's non-dischargeability claim. In other words, he contends

-11-

that his actions toward Clayton were justified or excused under Louisiana state law. The role of excuse or justification under section 523(a)(6) is not clear under post - Kawaauhau Fifth Circuit precedent. Outside of the Fifth Circuit, many courts consider "willful" and "malicious" as two distinct elements required to state a claim under section 523(a)(6). Under this approach, a "willful" injury is a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008) (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)). A malicious injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." In re Toth, 2017 WL 2665034 at *5 (9th Cir. B.A.P. June 20, 2017). In Williams and Miller, the Fifth Circuit subsumed "malice" into the "willfulness" element of section 523(a)(6), and thus eliminated the explicit requirement that the act causing the plaintiff's injury be "without just cause or excuse." Nevertheless, courts applying Williams and Miller appear to consider just cause or excuse as part of the determination of whether the conduct was "willful."

The Bankruptcy Code does not define "justification or excuse." Accordingly, bankruptcy courts tend to look to state-law defenses and privileges in cases involving intentional torts. In Louisiana,

-12-

courts recognize self-defense, consent, privilege, and an array of other defenses to a battery claim. Simon's pleadings, arguments, and the record raise justification or excuse based on self-defense, consent, La. R.S. 14:19(A)(1)(b)(1), justified force necessary to recover or protect property, and provocation.

With respect to self-defense as a justification for his conduct, Simon contends that Clayton acted aggressively and threatened both he and Ms. Wentworth. He further contends that Clayton acted aggressively in preventing Simon from leaving the scene by entering his truck and physically removing Simon's keys from the truck's ignition. Under Louisiana law, a person may use force when it appears to be necessary to defend oneself from a reasonably apparent attack by another. See, e.g., Dean v. Nunez, 423 So.2d 1299 (La. App. 4th Cir. 1982), writ denied, 430 So.2d 76 (1983). This threat, however, must be immediate. See Griffith v. Young, 62 So.3d 856 (La. App. 2nd Cir. 2011). The force used to counter the threat must be reasonable; excessive force does not excuse a battery. See Nunez, 423 So.2d 1299.

The record does not reflect any threat by Clayton in the first altercation sufficient to justify Simon throwing the first punch. At most, words were exchanged between the two parties. Mr. Fruge's testimony is consistent with Clayton's testimony that, while the two parties may have exchanged heated words, Clayton was not

-13-

physically aggressive towards Simon at the time Simon threw the first punch. (pl. Ex. No. 1 at 15-16). Moreover, Clayton had moved away from Simon's truck and did not pose an immediate threat to Ms. Wentworth. With respect to the altercation after Clayton took Simon's keys, Clayton had already retreated from Simon's truck when Simon pursued him and proceeded to beat him to the ground. The record does not reflect that Clayton struck Simon in the course of taking the keys or that he struck Simon after retreating from the truck. Even if Clayton's actions could be seen as a continuing threat, Simon's action in beating Clayton unconscious was an unreasonable use of force in light of the threat presented by Clayton. See Nunez, 423 So.2d 1299 (finding that the defendant's shove to protect himself and his tape recorder was not excessive force, but a punch in response to the push was an unprivileged battery). Accordingly, Simon's self-defense argument does not provide a justification or excuse sufficient to defeat a non-dischargeability claim under section 523(a)(6).

Louisiana also recognizes "consent" as a defense to a battery. Consent exists when the plaintiff impliedly or expressly consent to the harmful or offensive contact that is the subject of the battery. Guillot v. Guillot, 161 So.3d 841,847 (La. App. 3rd Cir. 2014); Touchet v. Hampton, 950 S.2d 895 (La. App. 34d Cir. 2007). For example, a plaintiff who voluntarily enters into a fistfight

likely consents to being hit. Here, however, the defense of consent is easily dispelled by the trial record. There is no evidence that Clayton's words or conduct expressly or impliedly consented to the beating that he received from Simon. Clayton testified that he did not expect the first punch by Simon and that the punch left him dazed. With respect to the altercation after Clayton took Simon's keys, Clayton testified that his sole purpose was to prevent Simon from leaving the scene before the police arrived. Simon admitted that Clayton told him that his purpose in taking the keys was to keep Simon from leaving the scene before the police arrived. (Tr. at 161). There is no evidence that he intended his actions to invite the beating he received after taking the keys. Accordingly, Simon cannot rely on consent to defeat non-dischargeability under section 523(a)(6).

Simon next argues that his use of force after Clayton entered his vehicle to remove the keys from the ignition was privileged under La. R.S. 14:19(b)(1). This provision provides that the use of force is justified:

> When committed by a person lawfully inside a...motor vehicle as defined in R.S. 32:1(40) when the conflict began, against a person who is attempting to make an unlawful entry into the...motor vehicle, or who has made an unlawful entry into...the motor vehicle, and the person using the force of violence reasonably believes that the use of force or violence is necessary to prevent the entry or

-15-

>                to compel the intruder to leave the motor
>                vehicle.

The record does not support his defense. Simon's use of force occurred after Clayton already exited the vehicle. Thus, this force was not necessary to prevent Clayton's entry into Simon's truck, nor was it necessary to compel Clayton to leave the truck. Moreover, any force used must be reasonable under the circumstances. Simon's beating of Clayton after Clayton took the truck keys far exceeded the amount of force necessary to protect the interests under La. R.S. 14:19(b)(1). Even if Simon was justified in using force to recover his keys, that use of force, as with the prior defenses and justifications discussed, had to be reasonable under the circumstances. As previously explained, Simon's use of force after Clayton obtained possession of his keys was not reasonable under the circumstances.

Finally, Simon suggests that his actions may be justified on the grounds of provocation. Louisiana law previously recognized provocation as an absolute defense to a battery. Under Louisiana's prior "aggressor doctrine," a plaintiff's recovery for a battery was barred if the plaintiff's own actions were sufficient to provoke a physical retaliation. See <u>Slayton v. McDonald</u>, 690 So.2d 1914 (La. App. 2nd Cir. 1997). In <u>Landry v. Bellanger</u>, 851 So.2d 943 (La. 2003), however, the Louisiana Supreme Court rejected the

-16-

aggressor doctrine as a defense to battery.  Instead, provocation by the plaintiff can only be considered as part of a comparative fault analysis in allocating fault between the plaintiff and the defendant.  Id. at 955.  Accordingly, while evidence of provocation may limit the plaintiff's damages under state law, it does not constitute a justification or excuse that eliminates the intent to injure element of a non-dischargeability claim under section 523(a)(6).  Here, regardless of any actions by Clayton that may have provoked the use of force, Simon intended to injure Clayton and his use of force under the circumstances was unreasonable.[1]

### CONCLUSION

For the foregoing reasons, the court finds for the plaintiffs on their claims under 11 U.S.C. § 523 (a)(6). Plaintiff shall submit a judgment in conformity with the court's ruling within ten (10) days.

###

---

[1] The court's finding in this regard does not address the extent to which Clayton's actions may be considered as part of a comparative fault analysis.  The state court in this case entered a default judgment and, accordingly, there were no comparative fault findings.  To the extent that further proceedings take place in state court, this court's determination with respect to non-dischargeability under section 523(a)(6) does not preclude further consideration of comparative fault.

-17-